# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CRAIG RUTZ and THOMAS LUDVIK, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 04 C 7203 |
| ) | |
| VILLAGE OF RIVER FOREST, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Two police officers, Craig Rutz and Thomas Ludvik, have sued their employer, the Village of River Forest, for age discrimination and retaliation under the Age Discrimination in Employment Act, 29 U.S.C. § 623(a) & (d). The Village has moved for summary judgment. For the reasons stated below, the Court denies the Village's motion.

## Facts

Rutz, age 53, and Ludvik, age 49, claim that River Forest discriminated against them on the basis of their age by not promoting either of them to the position of Deputy Chief of Operations (DCO). They also claim that River Forest decided not to promote them in retaliation for a similar age discrimination lawsuit they filed in 2003.

In the 2003 lawsuit, which is currently pending before Judge Joan Gottschall, Rutz and Ludvik allege that River Forest discriminated against them on the basis of their age and gender by not promoting either of them to the position of Deputy Chief of Administration (DCA). On August 24, 2005, Judge Gottschall denied River Forest's motion for summary judgment in that case.

Rutz and Ludvik began working for the River Forest police department on the same day, January 16, 1982. In 1997, River Forest promoted Rutz to the rank of lieutenant and made him Operations Division Commander, which is now the position known as DCO. From May to November 1998, he served as interim Chief of Police while River Forest sought someone to fill the position on a permanent basis. From 2000 to May 2002, he acted as Administrative Division Commander, which is now the position known as DCA. Rutz has a bachelor's degree and has completed post-graduate work in police training at Northwestern University.

Ludvik is currently the most senior sergeant on the River Forest police department. He has a bachelor's degree in criminal justice and has completed training at the Southern Police Command Institute.

On March 5, 2004, River Forest's Chief of Police, Nicholas Weiss, sent an e-mail to all police officers announcing that the DCO position was available and that he planned to fill it in the near future. The e-mail set out two minimum requirements for the job: five years of service as a police officer and a bachelor's degree in criminal justice or political science or the equivalent of a bachelor's degree in experience, training, and education. The e-mail also stated that "[t]he selection process [would] consist of a written exercise and an oral board," Def. Ex. VRF200007562; Chief Weiss would prepare and evaluate the written exercise; and an outside agency, Stanard & Associates, would administer the oral assessment. A formal job announcement describing the hiring process paralleled the information provided in Chief Weiss's e-mail.

Stanard & Associates, in conjunction with the police department's command staff, selected interview questions and developed a scoring system for grading applicants' responses to

the oral assessment. Stanard & Associates then recruited twelve potential interviewers from other police departments, and Chief Weiss solicited candidates' objections to the individuals selected. None of the seven candidates who applied for the DCO position objected to the potential interviewers, but Ludvik did object to Stanard & Associates's participation in the hiring process. He claimed that Stanard & Associates's owner, Steve Stanard, was biased against him because Steve Stanard had written a letter to the editor of the River Forest newspaper criticizing Ludvik and Rutz's decision to file the 2003 lawsuit. That letter read in relevant part as follows:

> What's happening in Chief Holub's department is truly a shame. He is being sued by three disappointed applicants for the position of deputy chief who are unhappy that two smart, competent individuals have beat [sic] them out for the job. These plaintiffs and their lawyers will probably be disappointed a second time when their suits are found to have no basis.

Pl. Ex. Y. Despite Ludvik's objection, Chief Weiss elected not to use a different agency to facilitate the oral assessment. He told Ludvik that Steve Stanard was not involved in the day-to-day operations of the business and that all ratings would be made exclusively by the interviewers. Chief Weiss also stated that he found it highly unlikely "that Steve Stanard would risk his reputation, or that of his firm, by trying to tamper with, or otherwise influence, the ratings of the assessors." Pl. Ex. X.

Stanard & Associates chose three interviewers from the list of twelve it originally recruited. It then prepared an administrative guide with interview questions, scoring criteria, administrative instructions, and rating forms, and the interviewers administered the oral assessment and completed the rating forms.

After the candidates completed the written and oral assessments, Chief Weiss tallied the scores and selected Sergeant Daniel Dhooghe, age 36, for the DCO position. Dhooghe's overall

score on the oral and written exams was the highest of all the candidates. Ludvik and Rutz's scores placed fourth and fifth, respectively.

The plaintiffs do not question the interviewers' or Chief Weiss's fairness in scoring the writen and oral assessments. They do point out, however, that in addition to the hiring criteria articulated by Chief Weiss's e-mail and job posting, River Forest Police Department General Order 21.2.3K separately provided that the "DCO must . . . have completed the appropriate course work in police management or administration, as issued by a recognized police academy." Pl. Ex. O at 1270. That order also listed a number of "essential skills, knowledge, and abilities" necessary to carry out the position of DCO. *Id.* at 1269. The list required the DCO to be knowledgeable of, among other things, all necessary computer operations; police administration and management; the technical aspects of law enforcement; the use of police records and their application to the solution of police problems; and municipal, state, and federal criminal and related laws, ordinances, and codes. River Forest concedes that in drafting the minimum requirements for the DCO job posting, Chief Weiss did not consult General Order 21.2.3K. *See* Weiss Dep. at 50, 55. River Forest also concedes that Chief Weiss did not consider candidates' experience and history with the department as part of the written or oral assessment. *See* Def. L.R. 56.1 Stmt. ¶ 52.

## Discussion

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). To avoid summary judgment, the plaintiffs have the burden of going beyond the

4

pleadings to affirmatively demonstrate, through affidavits or other admissible evidence, that there is a genuine issue of material fact which requires a trial. *See id.* 56(e); *East-Miller v. Lake County Highway Dep't,* 421 F.3d 558, 561 (7th Cir. 2005).

### 1. Age discrimination

The ADEA provides that it is unlawful for an employer to refuse to hire any individual because of his age. 29 U.S.C. § 623(a)(1). The plaintiffs have brought their age discrimination claim under a disparate treatment theory. Under this theory, they must prove that their age played a role in River Forest's decision making process and had a "determinative influence on the outcome." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000). In other words, the plaintiffs must show that "but for" age discrimination, they would have been promoted. *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 396 (7th Cir. 1997).

To establish their age discrimination claim, plaintiffs proceed under the familiar *McDonnell Douglas* burden-shifting method. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996) (applying *McDonnell Douglas* to claims brought under the ADEA). That method requires the plaintiffs to establish a *prima facie* case by showing that they were at least forty years old, they were qualified for a promotion, defendants denied them the promotion, and a similarly situated, substantially younger employee received the promotion. *Dandy v. United Parcel Svc., Inc.*, 388 F.3d 263, 273 (7th Cir. 2004). If the plaintiffs establish a *prima facie* case, then the burden shifts to River Forest to articulate a legitimate, nondiscriminatory reason for its hiring decision. *McDonnell Douglas*, 411 U.S. at 802. If River Forest satisfies its burden, then the plaintiffs must show that River Forest's proffered reason was a pretext for age discrimination. *Schuster v.*

5

*Lucent Techs., Inc.*, 327 F.3d 569, 574 (7th Cir. 2003). To satisfy their *McDonnell Douglas* burden on this summary judgment motion, the plaintiffs are not required to prove a *prima facie* case and pretext. *See Perdomo v. Browner*, 67 F.3d 140, 145 (7th Cir. 1995). They only need to offer evidence from which a jury reasonably could rule in their favor. *Id.*

The only element of plaintiffs' *prima facie* case that River Forest disputes is the one that requires plaintiffs to show they were qualified for the promotion. Specifically, River Forest argues that the plaintiffs were not qualified because they did not earn the highest overall score on the oral and written exams. As the plaintiffs point out, however, to establish this element, they need not offer evidence that they were the most qualified candidates. Rather, they only need to offer evidence that they possessed the minimum qualifications necessary to obtain the position. *See Turner v. Honeywell Fed. Mfg. & Techs., LLC*, 336 F.3d 716, 720-21 (8th Cir. 2003) ("To prove that he was qualified for the positions for the purpose of establishing a prima facie case of racial discrimination, [the plaintiff] need not have shown . . . that he was more than minimally qualified for the positions."). *See Mills v. Health Care Svc. Corp.*, 171 F.3d 450, 457 (7th Cir. 1999) (noting that plaintiff was "qualified" for purposes of *prima facie* case, where he established that he met the minimum qualifications for the position). Because River Forest concedes that the plaintiffs met the minimum qualifications for the promotion, *see* Def. Reply at 5, plaintiffs have satisfied their burden of establishing a *prima facie* case.

With the burden now on River Forest's shoulders, it offers a legitimate, non-discriminatory reason for not promoting the plaintiffs: they did not receive the highest overall score on the oral and written exam. River Forest maintains that the plaintiffs have offered no evidence that this reason was a pretext for age discrimination. *See Forrester v. Rauland-Borg*

6

*Corp.*, 453 F.3d 416, 417 (7th Cir. 2006). In response, plaintiffs argue that they have offered evidence that River Forest did not follow its own hiring procedures in selecting a DCO and that Dhooghe was not the most qualified candidate for the position. *See Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 723 (7th Cir. 2005).

In *Rudin*, the plaintiff, a white female, sued the defendant community college for race and sex discrimination after the college declined to hire her for a teaching position. *Id.* at 716. Hiring for the position was governed by the college's "Screening and Interviewing Committee Processes and Guidelines." *Id.* Among other things, the guidelines required that a ten person committee meet and come to a consensus on which applicants should receive interviews. *Id.* After interviews were conducted, the guidelines required the committee to meet and "thoroughly discuss[] the strengths and weaknesses of each candidate." *Id.* at 723. The committee was required to develop a "ranking of the candidates and to identify those candidates who [were] acceptable and non-acceptable," and the committee chair would then make a recommendation to his superiors based on the input of the other committee members. *Id.* The plaintiff offered evidence that, when it came to the job for which she applied, the committee never met to discuss the candidates. *Id.* In addition, though the committee members ranked the candidates, the committee chair did not take these rankings into account when making his final recommendation. *Id.* This fact was particularly prejudicial to the plaintiff because she was ranked second overall, and the person ultimately selected for the position was second to last. *Id.* at 717. The court held that "[t]his systemic abandonment of [the defendant's] hiring policies is circumstantial evidence of [race] discrimination." *Id.* at 723. It also held, in the context of its discussion of the plaintiff's sex discrimination claim, that the defendant's abandonment of its

7

policies was evidence of pretext. *Id.* at 727 (citing *Giacoletto v. Amax Zinc Co., Inc.*, 954 F.2d 424, 427 (7th Cir. 1992)).

Other circuits agree that an employer's failure to follow its own hiring procedures and subsequent hire of an arguably less qualified candidate can provide evidence of pretext. *See, e.g., Salazar v. Wash. Metro. Area Transit Auth.*, 401 F.3d 504, 508-09 (D.C. Cir. 2005) (holding that plaintiff created genuine issue of pretext by offering evidence that supervisor reneged on his promise that hiring panel would be comprised of people with no connection to individual who allegedly exhibited discriminatory animus against Latinos); *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 506 (9th Cir. 1989) (holding that plaintiff created genuine issue of pretext by offering evidence that employer did not follow normal procedure of offering transfers to employees no longer needed in their department).

In this case, as in *Rudin*, plaintiffs have offered evidence that River Forest promulgated hiring criteria for the position of DCO but did not follow them. As discussed above, General Order 21.2.3K provides a number of "Minimum Training and Experience Requirements" and "Essential Skills, Knowledge, and Abilities" that the DCO must possess. Nevertheless, Chief Weiss declined to consider any of these qualifications when drafting the minimum requirements for the job. *See* Weiss Dep. at 50. In addition, the questions posed by the written and oral assessments did little to shed light on whether a candidate possessed the technical knowledge required by the General Order. *See* Pl. Ex. V, W. The result of River Forest's hiring process was the selection of a younger, lower-ranked officer, with significantly less experience than Rutz and Ludvik. Given this evidence, a jury reasonably could find that the true reason that River Forest hired Dhooghe was not because he received highest overall score on the written and oral

8

assessment, but because he was substantially younger than the plaintiffs.

The Court recognizes that the Seventh Circuit has held that an employer can make exceptions to its personnel rules to hire the most qualified applicant for a job without raising an inference of illegal discrimination. *See Walker v. Abbott Labs.*, 416 F.3d 641, 643 (7th Cir. 2005). In *Walker*, the defendant employer made an exception to the minimum qualifications for a sales position by hiring an individual without a bachelor's degree. *Id.* at 644. The Court held that the defendant's failure to follow its personnel rules did not raise an inference of discrimination, in part, because the plaintiff conceded that "his all-round qualifications for a [promotion] were inferior" to the qualifications of the person who ultimately received the job. *Id.*

*Walker* did not cite or discuss *Rudin*, and its dicta about an employer's right to make exceptions to its personnel rules does not mesh perfectly with *Rudin*'s contrary holding. Nevertheless, we believe that *Walker* is distinguishable from the facts in this case because here, unlike in *Walker*, a jury reasonably could find that the plaintiffs' all-round qualifications were superior to those of the person ultimately hired. Indeed, the plaintiffs have offered evidence from which a jury reasonably could find that River Forest made an exception to its personnel rules not to hire the more qualified or experienced candidate, but to hire the less-qualified, less-experienced, younger candidate. Under these circumstances, as in *Rudin*, we believe the failure to follow personnel rules is evidence of pretext.

**2.   Retaliation**

The ADEA makes it illegal for an "employer to discriminate against any of his employees or applicants for employment . . . because such individual . . . has made a charge . . .

9

[in] litigation under this chapter." 29 U.S.C. § 623(d).  The plaintiffs bring a claim under this section, proceeding once again under the *McDonnell Douglas* burden-shifting method.

To establish a *prima facie* case of retaliation, plaintiffs must show that after filing a charge of discrimination, plaintiffs were subject to an adverse employment action; plaintiffs were performing their jobs in a satisfactory manner; and a similarly situated employee who did not file a charge was treated more favorably.  *Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 560 (7th Cir. 2004).  If plaintiffs establish a *prima facie* case, the burden shifts to River Forest to put forth a non-discriminatory reason for the adverse action, and plaintiffs must then show that the proffered reason is a pretext for retaliation.  Again, for purposes of summary judgment, plaintiffs are required only to offer evidence from which a jury reasonably could decide in their favor; they do not have to prove either a *prima facie* case or pretext.

In its opening brief, the only element of the prima facie case that River Forest disputes is the one requiring plaintiffs to show they suffered an adverse employment action.[1]  *See* Def. Reply at 11-13 & n.6.  River Forest concedes, however, that the plaintiffs applied for and were denied a promotion.  *See* Def. L.R. 56.1 Stmt. ¶¶ 69-71.  The denial of a promotion is plainly an adverse employment action.  *See Rhodes v. Ill. Dept. of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004).

This means that the plaintiffs need only offer evidence that River Forest's reason for not promoting them (that they did not earn the highest score on the oral and written assessment) is a

---

[1] In its reply brief, River Forest argues – for the first time – that the plaintiffs cannot point to a similarly situated person who did not file a charge of discrimination and was treated more favorably.  Arguments raised for the first time in a reply brief are forfeited.  *See, e.g., EEOC v. Michelin North America, Inc.*, 47 F. Supp. 2d 984, 986 (N.D. Ill. 1999).

10

pretext for retaliation. The same evidence of pretext plaintiffs offer to support their age discrimination claim – River Forest's abandonment of its published hiring criteria – is also evidence of pretext on their retaliation claim. *See Miller*, 885 F.2d 498 (holding, in a retaliation case, that employer's failure to follow established employment procedures was evidence of pretext). Because a jury reasonably could find that River Forest's decision not to promote the plaintiffs was in retaliation for their 2003 lawsuit, the Court denies River Forest's motion for summary judgment on the plaintiffs' retaliation claim.

**Conclusion**

For the foregoing reasons, the Court denies defendant's motion for summary judgment [docket no. 33]. Defendant's motion to set a briefing schedule is terminated as moot [docket no. 38]. Plaintiffs' motion for leave to file transcript is granted [docket no. 81]. The case is set for a status hearing on September 11, 2006 at 9:30 a.m. for the purpose of discussing the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 30, 2006